The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Robert G. SALTRAY, Defendant–Appellant.

No. 97CA0278.

Colorado Court of Appeals, Div. IV.

April 2, 1998.

Rehearing Denied April 30, 1998.

Certiorari Denied Jan. 11, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Kim L. Montagriff, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Paul Grant, Parker, for Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, Robert G. Saltray, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of felony menacing. We affirm.

According to the prosecution's evidence, a neighbor of defendant was conversing with him at the end of defendant's driveway during daylight hours. The victim came out of an adjacent residence and walked to his automobile which was parked on the street. En route to his vehicle, the victim either waved or said hello to defendant and the neighbor.

Upon seeing the victim, defendant said, "Oh, no." The neighbor turned her head towards the victim to see what was wrong and heard defendant say, "If he comes any closer I'm going to let him have one." The neighbor then turned back to see defendant holding what she described as a small black revolver with a rust-colored handle. Defendant was holding the revolver with his finger on the trigger, and the weapon was pointed at the victim.

According to the neighbor, defendant continued to point the weapon at the victim and walked backwards up his driveway towards his garage. Once inside the garage, defendant gave the neighbor a signal with his arms like an "all safe in baseball," and then pulled the garage door down.

At the time of the incident, the victim's car was parked in such a way that the victim was facing away from defendant. While the victim testified that he did not see the weapon or hear any threat from defendant, the record reflects that he would have seen the weapon had he happened to turn around and face the defendant.

## I.

Defendant contends that the offense of felony menacing requires an awareness on the part of the victim that he is being threatened and that, therefore, the prosecution's evidence was insufficient as a matter of law to sustain his conviction. In effect, he asserts that the rule of lenity should be applied to add this requirement to the menacing statute. In a related contention, defendant argues that the evidence was otherwise insufficient to show that he was aware that his conduct was practically certain to place the victim in fear. We are not persuaded by either contention.

Colorado's menacing statute, § 18–3–206, C.R.S.1997, provides as follows:

A person commits the crime of menacing if, by any threat or physical action, he knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, if committed by the use of a deadly weapon, it is a class 5 felony.

■ In *People v. Stout*, 193 Colo. 466, 568 P.2d 52 (1977), our supreme court held that to sustain a conviction under the former version of the statute it was unnecessary for the prosecution to prove actual subjective fear on the part of the victim. *See also People v. Williams*, 827 P.2d 612 (Colo.App.1992)(victim was not afraid and did not believe the defendant would use his knife). From this analysis, it follows that the proper focus is on the intent and conduct of the actor and not the victim. Nor do we view the statute as ambiguous in this context, and thus, it is unnecessary to address the rule of lenity. *See Koucherik v. Zavaras*, 940 P.2d 1063 (Colo.App.1996).

■ As pertinent here, the current statute requires the prosecution to prove that defendant acted knowingly, *i.e.*, that he was aware that his conduct was such that it was practically certain to place the victim in fear of imminent serious bodily injury. As stated by our supreme court in *People v. Crump*, 769 P.2d 496, 499 (Colo.1989):

[T]he mental culpability element of felony menacing is satisfied when the offender is aware that he is placing or attempting to

place another person in fear of imminent serious bodily injury by the use of a deadly weapon, regardless of whether or not the offender had a conscious objective to cause such fear in the other person.

As a result, in *People v. Zieg*, 841 P.2d 342 (Colo.App.1992), a division of this court held that what the victim saw or heard during the course of a felony menacing incident would be relevant to determining defendant's intent but that it was unnecessary to prove that the victim actually knew a deadly weapon was involved. The court stated:

> Hence, we conclude that, if the actions of the perpetrator would reasonably cause fear of imminent serious bodily injury in the victim ... felony menacing has been committed.

*People v. Zieg, supra*, 841 P.2d at 344.

■ By the same reasoning, we conclude that it is unnecessary for the victim actually to hear or be cognizant of any threat from defendant. Instead, if there is evidence from which the jury could reasonably find that defendant knew his actions, if discovered, would place the victim in fear of imminent serious bodily injury by use of a deadly weapon, then the intent element of the offense may be established. *See People v. Manzanares*, 942 P.2d 1235 (Colo.App.1996)(defendant's subjective awareness may be inferred from his conduct and the surrounding circumstances).

Here, in evaluating this issue, we must view the relevant evidence, both direct and circumstantial, as a whole and in the light most favorable to the prosecution. In that context, if the evidence and the inferences from that evidence are sufficient to support a conclusion by a reasonable mind that defendant's conduct satisfied this requirement, the conviction must be affirmed. *See Taylor v. People*, 723 P.2d 131 (Colo.1986).

■ Viewing the record under that standard, we conclude that the jury could reasonably infer defendant's awareness that, if the victim had turned towards him at any time during the incident, he would have seen the weapon pointed at him. The jury could also infer that it was practically certain that the victim would do so because he had already waved or said hello to defendant and the neighbor. Conversely, there is no evidence that defendant was attempting to conceal his conduct in any manner from the victim until he retreated towards his garage. Hence, we are not persuaded by either of defendant's contentions.

## II.

Defendant also contends that the evidence was insufficient to show that he was armed with a deadly weapon. Again, we disagree.

No weapon was introduced into evidence. However, the neighbor who was standing two to three feet from defendant described what she saw in some detail. Specifically, she described the pistol as six to eight inches long, small, black, with a rust-colored handle, and she said she could see the cylinder where the bullets are inserted. In addition, defendant's actions indicated that he had a deadly weapon because he pointed it at the victim with his finger on the trigger and made a threat.

Taking this evidence in the light most favorable to the prosecution, we conclude that the jury could reasonably find that defendant was armed with a deadly weapon. *See Taylor v. People, supra*.

## III.

Defendant's final contention is that the trial court erred in giving the jury a "modified *Allen*" instruction instead of declaring a mistrial. Specifically, he complains that the court was aware of the numerical division of juror opinion, that the jurors had already indicated that they were deadlocked, and that, knowing the division of opinion, the court gave an instruction that reflected a bias in favor of the prosecution. We find no reversible error.

The jury began deliberations at approximately 11:17 a.m. following a one-day trial. At approximately 3:05 p.m., the jury sent a note to the court which stated as follows:

> The jury has been deliberating since 11:30 a.m. First vote was seven guilty, five not guilty (12:45 p.m.), second vote (2:15 p.m.) was nine guilty, three not guilty. The three members voting not guilty say they will not reconsider. Several members who

voted guilty say they will not change. The jury cannot reach a unanimous verdict. The court, over defendant's objection, then gave the jury an instruction that tracks the language of COLJI–Crim. 38:14 (1983), *i.e.,* the so-called "modified *Allen*" instruction. *See Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979). At 5:00 p.m., the jury returned a guilty verdict.

The decision whether to use the "modified *Allen*" instruction is left to the discretion of the trial court, and its ruling may not be reversed unless the record reflects an abuse of that discretion. *People v. Schwartz,* 678 P.2d 1000 (Colo.1984).

Prior to giving the instruction, the court should first inquire whether the jurors believe there is little likelihood of progress towards a unanimous verdict. *People v. Ragland,* 747 P.2d 4 (Colo.App.1987). However, the inquiry should not be directed to determining how many jurors favor one verdict or the other because the objective is to avoid the possibility that the jurors will reach a compromise verdict. *See Lowe v. People,* 175 Colo. 491, 488 P.2d 559 (1971).

Here, because the trial court was informed by the jury that its members were deadlocked, we find no error in the court's failure to make this inquiry.

On the other hand, based on the language of the instruction, we reject defendant's assertion that an element of coercion was present merely because the note disclosed the number of jurors who favored a guilty verdict. *See People v. Harris,* 914 P.2d 425 (Colo.App.1995). Specifically, the instruction reminded each juror of the proper method for arriving at a deliberative verdict in order to break its deadlock without sacrificing honest convictions. And, there is nothing in the record to indicate that in reaching their verdict, the jurors based their conclusion on anything other than the guidelines stated in the instruction.

Accordingly, the judgment is affirmed.

HUME, C.J., and NEY, J., concur.