The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Evin SHAWN, Defendant–Appellant.

No. 02CA2394.

Colorado Court of Appeals, Div. II.

Sept. 9, 2004.

Certiorari Denied Jan. 31, 2005.

Ken Salazar, Attorney General, Catherine P. Adkisson, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Mark G. Walta, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge PIERCE.*

Defendant, Evin Shawn, appeals a judgment of conviction entered on a jury verdict finding him guilty of felony menacing. We affirm.

## I.

In 2001, the victim, the assistant manager of a drug store, observed defendant place a bag to the side of the security gate, go through the gate to exit the store, and retrieve the bag. When the victim asked defendant to go back through the gate with the bag, defendant fled, and the victim chased him through the parking lot.

In the parking lot, the victim forced defendant to the ground, and an altercation occurred during which defendant allegedly

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

made a threat by saying he was HIV positive.

Defendant's theory at trial was that he did not intend to threaten the victim, but only to warn him of his medical condition.

The jury found defendant guilty of felony menacing and misdemeanor theft, but defendant appeals only the menacing conviction.

## II.

Defendant contends the evidence was insufficient to sustain his felony menacing conviction because (1) his statement to the victim was not a threat; (2) he did not possess a deadly weapon; and (3) he did not "use" a deadly weapon. We disagree.

In reviewing an insufficiency of evidence claim, we view the evidence presented as a whole and in the light most favorable to the prosecution to determine whether the evidence is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *People v. Rivera,* 56 P.3d 1155 (Colo.App.2002). The prosecution is entitled to the benefit of every reasonable inference that may be fairly drawn from the evidence, even if the record also contains evidence to the contrary. *People v. Morrow,* 682 P.2d 1201 (Colo.App. 1983).

As relevant here, a person commits the crime of menacing if, "by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." Menacing is a felony if committed by "the use of a deadly weapon" or by "the person representing verbally or otherwise that he or she is armed with a deadly weapon." Section 18–3–206(1)(a)–(b), C.R.S.2003; *People v. Hines,* 780 P.2d 556 (Colo.1989).

### A.

First, defendant contends that the evidence was insufficient to show his statement constituted a threat. We disagree.

§ 24–51–1105, C.R.S.2003.

■ A threat is a statement of purpose or intent to cause injury or harm to another person. *People v. Hines, supra; People v. Zieg,* 841 P.2d 342 (Colo.App.1992).

■ In determining whether the defendant knowingly placed or attempted to place another person in fear of imminent serious bodily injury, the proper focus is on the intent and conduct of the actor, not of the victim. The prosecution need only prove the defendant was aware that his or her conduct was practically certain to cause fear. *People v. Dist. Court,* 926 P.2d 567 (Colo.1996); *People v. Saltray,* 969 P.2d 729 (Colo.App.1998).

Thus, "what the victim saw or heard during the course of a felony menacing incident" is relevant to determining the defendant's intent. *People v. Saltray, supra,* 969 P.2d at 732. But it is not necessary to show either that the defendant had a conscious objective to cause such fear in the victim or that the victim actually knew a deadly weapon was involved. *People v. Crump,* 769 P.2d 496 (Colo.1989); *People v. Saltray, supra.*

■ Here, the victim testified that he chased defendant into the parking lot and forced him to the ground. The victim further testified that defendant scratched and pinched the victim on both arms with his fingernails; defendant broke the skin on the victim's right arm; defendant stated, "I'm HIV positive, let go of me, let go of me"; and defendant repeated the assertion that he was HIV positive. HIV is defined as the human immunodeficiency virus that causes acquired immune deficiency syndrome (AIDS). The victim thought the statement was alternatively a threat, a warning, or a ruse and thought defendant was trying to bite him. He moved his arm to avoid being bitten.

Viewing these statements and incidents in the light most favorable to the prosecution, we conclude the evidence is sufficient to lead a reasonable person to find defendant's conduct was practically certain to cause fear and was intended to threaten the victim.

Contrary to defendant's contention, the victim's testimony that he was not in imminent fear of injury does not require another result. The menacing statute requires that the defendant place or attempt to place the other person in fear of "imminent serious bodily injury" and focuses on whether the

defendant's conduct was practically certain to cause fear. Section 18–3–206; *People v. Dist. Court, supra.* The victim's actual reaction is not dispositive in determining defendant's intent. *See People v. Saltray, supra.*

We also reject defendant's contention that the jury could not find the existence of a threat because his statement to the victim, "I'm HIV positive, let go of me, let go of me," was susceptible of multiple interpretations. *See People v. Saltray, supra; People v. Morrow, supra.*

### B.

■ Next, defendant contends that the evidence was insufficient to show he possessed a "deadly weapon." He argues that there was no evidence that the substance on his finger was actually blood, that the blood was present on his fingernail at the time he pinched and scratched the victim, that he knew he had blood on his fingernail at the time, that he was HIV positive, or that his actions were capable of transmitting HIV. We disagree.

As relevant here, a "deadly weapon" means any weapon, device, instrument, *material, or substance,* whether animate or inanimate, which in the manner it is used or intended to be used is capable of producing death or serious bodily injury. Section 18–1–901(3)(e)(IV), C.R.S.2003.

■ Whether an object or substance is a deadly weapon depends on a two-step inquiry: (1) the object or substance must be used or intended to be used as a weapon; and (2) it must be capable of causing serious bodily injury. *People v. Stewart,* 55 P.3d 107 (Colo. 2002).

Thus, any object or substance can be a deadly weapon within the meaning of § 18–1–901(3)(e)(IV) if it is used in a manner capable of producing death or serious bodily injury. *People v. Stewart, supra; see People v. Ross,* 831 P.2d 1310, 1312 (Colo.1992)(fist can be a deadly weapon); *Bowers v. People,* 617 P.2d 560, 562–63 (Colo.1980)(bottle may be a deadly weapon depending on how it is used).

"Serious bodily injury" means bodily injury that, as relevant here, either at the time of

the actual injury or at a later time, involves a substantial risk of death or a substantial risk of protracted loss or impairment of the function of any part or organ of the body. Section 18–1–901(3)(p), C.R.S.2003.

■ Initially, we reject defendant's reliance upon authority from other jurisdictions whose analysis of whether HIV is a deadly weapon depended on the extent to which the defendant's actions were likely to result in transmitting HIV. *See United States v. Moore*, 846 F.2d 1163 (8th Cir.1988)(defining deadly or dangerous weapon as object used in a manner likely to endanger life or inflict serious bodily harm); *Scroggins v. State*, 198 Ga.App. 29, 401 S.E.2d 13, 16 (1990)(considering assault with deadly weapon or "any object ... which ... is likely to or actually does result in serious bodily injury" under Ga.Code Ann. § 16–5–21(a)(2) (2003)). In Colorado, the controlling standard is whether the object or substance is "capable" of causing, rather than "likely" to cause, serious bodily injury. *People v. Stewart, supra*, 55 P.3d at 117.

Turning to the merits and again viewing the evidence in the light most favorable to the prosecution, we conclude the evidence is sufficient to lead a reasonable person to believe that defendant stated he was HIV positive with the intent to use the infection as a deadly weapon and that HIV-infected blood or other body fluids are capable of causing serious bodily injury.

We recognize that the dangers of HIV are widely known, and we conclude that it is capable of causing injury or harm to another person. *See* § 25–4–1401, C.R.S.2003 (declaring infection with HIV causes AIDS and is an infectious and communicable disease that endangers the population of this state); *Brock v. State*, 555 So.2d 285 (Ala.Crim.App. 1989)(court took judicial notice that AIDS is life-threatening disease and contraction of HIV constitutes a serious physical injury).

In reaching our conclusion, however, we emphasize that defendant made his menacing statement indicating an intent to harm during a physical altercation. *See State v. Ainis*, 317 N.J.Super. 127, 721 A.2d 329 (1998)(hypodermic needle was deadly weapon where defendant threatened to use it to spread AIDS during robbery, regardless of whether needle was actually infected); *cf. Smallwood v. State*, 343 Md. 97, 680 A.2d 512 (1996)(whether AIDS was used as a deadly weapon depends on defendant's explicit statement and actions demonstrating intent to infect the victim with HIV).

We also note that the felony menacing offense at issue here does not require the defendant actually to cause injury to another by use of a deadly weapon, but rather requires only that the defendant knowingly places or attempts to place another in fear of imminent serious bodily injury by use of a deadly weapon. *See* § 18–3–206(1)(b); *People v. Saltray, supra*. By contrast, an offense such as assault requires proof that the defendant caused injury to another by means of a deadly weapon, and we thus distinguish those assault cases from our conclusion here. *See* §§ 18–3–202 to 18–3–204, C.R.S.2003 (defining assault in the first, second, and third degree).

### C.

■ Defendant also contends there was no evidence he "used," as distinguishable from merely possessed, a deadly weapon. We disagree.

Although under § 18–3–206(1)(b), menacing is a felony if committed by the "use" of a deadly weapon "or by the person representing verbally or otherwise that he or she is armed with a deadly weapon," the jury here was instructed only as to "use."

The term "use" in § 18–3–206 is "broad enough to include the act of holding the weapon in the presence of another in a manner that causes the other person to fear for his safety." *People v. Hines, supra*, 780 P.2d at 559; *see also People v. Atencio*, 878 P.2d 147, 151 (Colo.App.1994)(in statutes that punish the use of a weapon in connection with a crime, the term "use" has been interpreted in a common sense manner).

For example, in *People v. Hines, supra*, 780 P.2d at 558, the defendant held a gun at his side, but did not point the gun at the victim, and stated to the victim, "You make one move ... and I will put a hole in you." The defendant argued that he merely pos-

sessed his weapon, but did not use it against the victim. The supreme court rejected his argument and held that the defendant's conduct was sufficient to establish use of a deadly weapon.

In *People v. Frye*, 872 P.2d 1316 (Colo. App.1993), *aff'd*, 898 P.2d 559 (Colo.1995), the defendant held a gun to the victim's head during a sexual assault, left the room, and when he returned stated, "I don't want to hurt [any]body, but I will if I have to protect myself." Though the victim did not see the defendant with the gun when he made the threat, she testified that she was still in fear of imminent serious bodily injury from the defendant's earlier conduct.

The defendant in *Frye* argued that because the victim did not see the gun when he returned, he did not use a deadly weapon. A division of this court rejected the argument and reasoned that the jury could infer the defendant "still had the gun in his possession, though concealed," had "ready access to [it] and, therefore, could 'use' it to induce fear in the victim, even though it was not then visible to her." *People v. Frye, supra*, 872 P.2d at 1319; *see also People v. Dist. Court, supra* (evidence of use of deadly weapon was sufficient where defendant threatened to kill victim while holding knife used to stab another); *People v. Manzanares*, 942 P.2d 1235, 1239 (Colo.App.1996)(evidence was sufficient where defendant shot gun into the air, not at victims); *People v. Segura*, 923 P.2d 266 (Colo.App.1995)(evidence was sufficient where defendant threatened to kill victim and picked up knife).

Similarly, here, we conclude the evidence that defendant stated he was HIV positive, pinched and scratched the victim, and attempted to bite him was sufficient to show defendant "used" his purported HIV status in a manner that could cause the victim to fear for his safety. By attempting to break the victim's skin, defendant had ready access to means of transmitting HIV and thus used the infection to attempt to induce fear in the victim.

Hence, we conclude the evidence was sufficient to sustain defendant's felony menacing conviction.

Judgment affirmed.

Chief Judge DAVIDSON and Judge CASEBOLT concur.