The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 19, 2018

**2018COA52**

**No. 14CA1392, *People v. Margerum* — Constitutional Law — Sixth Amendment — Confrontation Clause; Criminal Law — Trials — Right of Accused to Confront Witnesses; Evidence — Witnesses — Scope of Cross-Examination; Crimes — Assault — Menacing**

A division of the court of appeals considers whether the fact that a witness is on probation at the time of trial, without more, implicates a defendant's constitutional right to cross-examine the witness on potential motive, bias, or prejudice. The division concludes that a witness's probationary status alone does not implicate a defendant's constitutional right to cross-examine witnesses. Rather, the facts of the case must show that a logical connection exists between the probationary status and the witness's motive to testify in favor of one party.

The division further addresses a novel question in Colorado: Can the physical conduct underlying an assault conviction be the same single action that underlies a menacing conviction? The division concludes that a single physical act supporting an assault conviction, with no additional physical action or verbal threat, can be sufficient to simultaneously support a menacing conviction.

Accordingly, the division affirms the judgment of conviction.

COLORADO COURT OF APPEALS                                    **2018COA52**

Court of Appeals No. 14CA1392
Jefferson County District Court No. 13CR1726
Honorable Tamara S. Russell, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lance Webster Margerum,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE ROMÁN
Dunn and Welling, JJ., concur

Announced April 19, 2018

Cynthia H. Coffman, Attorney General, Gabriel P. Olivares, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Meredith K. Rose, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Lance Webster Margerum, was convicted of unlawful sexual contact without physical force, third degree assault, and menacing with a deadly weapon. On appeal, he challenges the unlawful sexual contact and menacing convictions.

¶ 2     Defendant's arguments raise two issues of first impression in Colorado. First, he argues that the trial court violated his rights under the Confrontation Clause by not allowing him to cross-examine a witness concerning her probationary status. We conclude that a witness's probationary status alone does not implicate a defendant's constitutional right to cross-examine the witness on potential motive, bias, or prejudice. Rather, the facts of the case must show a logical connection between the probationary status and the witness's motive to testify in favor of one party.

¶ 3     Second, he argues that there was insufficient evidence to support his menacing conviction because the physical conduct underlying his assault conviction is the same single act underlying his menacing conviction. Answering a novel question in Colorado, we conclude that a single physical act supporting an assault conviction, with no additional physical action or verbal threat, can be sufficient to also support a menacing conviction.

1

¶ 4    Accordingly, we affirm the judgment.

## I.    Background

¶ 5    One afternoon, defendant was alone in a friend's apartment with the friend's girlfriend (E.S.). Defendant followed E.S. into her bedroom and began telling her that she could do better than her boyfriend and that she should kiss him. E.S. rebuffed his advances.

¶ 6    Defendant became angry and forced E.S. onto the bed, climbing on top of her. He kissed her face, neck, and chest and groped her buttocks and breasts. Then he tried to remove her clothing. E.S. continued resisting defendant, promising him that if he stopped, she would not tell anyone. Eventually he stopped and let her leave the apartment.

¶ 7    Shortly after E.S. left, defendant texted his sister (T.M.) to come to the apartment. He told her that he had a bag of clothes he wanted to give her.

¶ 8    T.M. arrived at the apartment with her one-year-old son. Once inside the apartment, T.M. discovered that defendant did not have any clothes for her. Defendant immediately began acting strangely

and grabbed his crotch while looking directly at T.M. T.M. turned to get her son and leave the apartment.

¶ 9 When T.M. turned her back on defendant, he — without warning — grabbed her around the neck and began choking her. T.M.'s vision became blurry and she had difficulty breathing. She later testified that at this point she felt like she "was going to die." She and defendant fell onto the couch and then onto the floor. Defendant then pinned T.M. underneath him and began groping her body.

¶ 10 T.M. grabbed a glass candleholder and hit defendant on the back of the head, which allowed her to escape his grasp. She then grabbed her son and fled the apartment.

¶ 11 Based on these events, the People charged defendant with second degree burglary, two counts of unlawful sexual contact by physical force or physical violence, second degree assault, third degree assault, child abuse, and menacing with a deadly weapon.

¶ 12 At trial, defendant informed the court that he intended to impeach E.S. based on a prior event where she had used her cousin's ID and a forged prescription in an attempt to obtain painkillers from a local pharmacy. E.S. pleaded guilty to

misdemeanor forgery in a different jurisdiction and was sentenced to a year of probation. She was on probation at the time of defendant's trial.

¶ 13   The trial court ruled that the facts underlying E.S.'s conviction were admissible but that the conviction itself and her probationary status were inadmissible.

¶ 14   The jury acquitted defendant of four counts, but convicted him of unlawful sexual contact without physical force as to E.S., and third degree assault and menacing with a deadly weapon as to T.M.

## II.   Confrontation Clause

¶ 15   Defendant argues the trial court violated his constitutional right to confront witnesses against him when it precluded him from cross-examining E.S. regarding her probationary status. Because the record contains no facts logically connecting the witness's probationary status with her motive to testify in defendant's trial, we disagree.

### A.   Preservation

¶ 16   As a preliminary matter, the People argue that defendant did not preserve this claim for appellate review. We disagree.

¶ 17    Where a defendant raises an issue sufficiently to give the trial court an opportunity to rule on the claim raised on appeal, we conclude the claim is sufficiently preserved. *People v. Boulden*, 2016 COA 109, ¶ 5.

¶ 18    At trial, defense counsel informed the trial court that E.S. had a misdemeanor forgery conviction that "she is currently on probation for," and that he intended to bring up this subject on cross-examination. The trial court reserved ruling on this issue.

¶ 19    The trial court revisited the issue before E.S. testified. The prosecutor argued that the conduct underlying the conviction was inadmissible, but conceded "[t]he fact that she is testifying, and she still is under probation; that can be the subject of some cross-examination." The trial court questioned the prosecutor about this position, and the prosecutor responded "whether or not the fact that someone has a current case pending or if they are under supervision can be brought out in their testimony as it relates to [bias]. . . . I think that's what the caselaw says."

¶ 20    Defense counsel then argued why the underlying conduct was admissible for impeachment, without addressing the point about probation that the prosecutor had just conceded, concluding that "I

don't think it's prejudicial, especially if [the prosecutor] is saying we can ask about the probation."

¶ 21    The prosecutor responded and slightly altered his position, citing *People v. Melanson*, 937 P.2d 826 (Colo. App. 1996), for the proposition that probationary status in another jurisdiction is not admissible for impeachment.

¶ 22    The trial court ruled on the issue as follows:

> I don't know of any case law at all that you can cross-examine someone about being on probation for a misdemeanor if it's not within their jurisdiction, if it doesn't have anything to do with the case, if it's not to, as you indicated, curry favor.  So I'm not going to allow you to go into that.

¶ 23    Based on this record, it is clear that defendant raised the issue, the prosecutor responded, and the trial court issued a ruling. Accordingly, the claim is sufficiently preserved for appellate review.

### B.    Applicable Law

¶ 24    The right of a criminal defendant to confront witnesses against him or her is guaranteed by both the United States and Colorado Constitutions.  U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16.  The primary interest secured by the right to confrontation is

6

the right of cross-examination. *Davis v. Alaska*, 415 U.S. 308, 315 (1974).

¶ 25    The scope and duration of cross-examination are controlled by the trial court, and judges have wide latitude under the Confrontation Clauses to impose reasonable limits on cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Kinney v. People*, 187 P.3d 548, 559 (Colo. 2008).

¶ 26    Nonetheless, the right of confrontation requires courts to allow broad cross-examination of a prosecution witness as to bias, prejudice, and motivation for testifying. *People v. Bowman*, 669 P.2d 1369, 1375 (Colo. 1983). This is especially important when a witness faces pending criminal charges and there is a possibility that a promise of leniency, or even the mere hope of leniency, might influence the witness's testimony in the defendant's case. *Id.* (citing *People v. King*, 179 Colo. 94, 98, 498 P.2d 1142, 1144-45 (1972)).

¶ 27    Likewise, the need for wide latitude in cross-examination is present when a prosecution witness is on probation and her testimony could be prompted by fear or concern for possible jeopardy to her probationary status. *Davis*, 415 U.S. at 311, 317-18; *Bowman*, 669 P.2d at 1375.

¶ 28 To be sure, the defendant must "merely show the possibility . . . that the witness's testimony was being influenced." *Kinney*, 187 P.3d at 560. "Even when there has not been an explicit promise of leniency made by the prosecution, an offer of proof or testimony by the witness articulating an expectation for leniency has not been required." *Id.* at 561.

¶ 29 The Colorado Supreme Court has clarified that the relevant test for whether a trial court must permit cross-examination on pending cases is "whether the *particular facts of the case* show that the witness's testimony *might have been influenced* by a promise for, or simply a hope or expectation of, leniency in exchange for favorable testimony." *Id.* (emphasis added).

¶ 30 On review, we will not disturb a trial court's ruling on the scope and limits of cross-examination absent an abuse of discretion. *See People v. Conyac*, 2014 COA 8M, ¶ 91. While the court has discretion to limit cross-examination, it is constitutional error to limit excessively a defendant's cross-examination. *Id.* at ¶ 92.

## C. *Davis v. Alaska*

¶ 31    Defendant primarily relies on the seminal United States Supreme Court case of *Davis v. Alaska.* He argues that in cases, such as here, where the trial court prevents cross-examination on a witness's probationary status, *Davis* compels reversal because a witness's probationary status shows a potential bias or motive in testifying. Defendant reads *Davis* too broadly.

¶ 32    In *Davis*, the defendant was charged with a burglary in which a safe was stolen from a bar. 415 U.S. at 309. Police later discovered the empty safe near where Richard Green lived. *Id.* At the time, Green was on juvenile probation for committing two burglaries. *Id.* at 311. Green identified the defendant as one of two men he had seen and spoken to a day after the burglary, near where the safe was found. *Id.* at 310.

¶ 33    At trial, the defendant wanted to show that Green was on probation for burglary and thus had a strong motive to lie in order to shift any suspicion away from himself, particularly given that the safe in question was found abandoned near his home. *Id.* at 311. The trial court refused to allow this evidence. *Id.*

¶ 34    On appeal, the Supreme Court held that, "[o]n these facts," the trial court had violated the defendant's constitutional right to cross-examine the witness against him for bias and motive.  *Id.* at 318. The Court observed that this line of questioning was allowable because the defendant sought to develop a claim of bias based on "Green's vulnerable status as a probationer, as well as [on] Green's possible concern that he might be a suspect in the investigation." *Id.* (citation omitted).

¶ 35    In reaching this holding, the *Davis* Court carefully explained the issue was not a general attack on a witness's credibility through evidence of a prior crime, but a "more particular attack on the witness' credibility . . . by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 316.

¶ 36    Whether based on Green's probationary status or his concern that he was a potential suspect, the defendant's allegations of witness bias were directly related and connected "to issues or personalities in the case at hand." *Id.*  The Court explained that Green might have offered biased testimony, believing himself a

possible suspect, both because he had been involved in similar crimes and because the stolen safe was found near his home. *See id.* at 311. Further, the police might also have brought undue pressure on Green to make an identification of someone — anyone — because he was in a vulnerable relationship with the state and feared probation revocation. *Id.*

¶ 37 In his concurring opinion, Justice Stewart summarized the holding of *Davis* as follows:

> The Court holds that, in the circumstances of this case, the Sixth and Fourteenth Amendments conferred the right to cross-examine a particular prosecution witness about his delinquency adjudication for burglary and his status as a probationer. Such cross-examination was necessary *in this case* in order "to show the existence of possible bias and prejudice . . . ."

*Id.* at 321 (Stewart, J., concurring) (emphasis added).

¶ 38 Thus, *Davis* is a fact-specific holding and does not establish a general rule that a defendant may always use the probationary status of a witness to impeach for bias or motive.

D. Colorado Cases

¶ 39 No Colorado case has squarely analyzed the issue raised by this case.

11

¶ 40    In *Kinney*, our supreme court addressed when a defendant has a right under the Confrontation Clauses to cross-examine a witness about a pending criminal case — not a witness's probationary status. *See* 187 P.3d at 560. Further, *Kinney* involved facts beyond the mere existence of pending charges, as there was evidence that the prosecutor's office had provided "ongoing, significant help" to the witness on an earlier charge. *Id.* at 551.

¶ 41    The closest case in Colorado is *People v. Jones*, 971 P.2d 243, 244 (Colo. App. 1998), *overruled on other grounds by People v. Segovia*, 196 P.3d 1126 (Colo. 2008), in which a division of this court also concluded that excluding evidence of a witness's probationary status did not violate the defendant's rights under the Confrontation Clauses.

¶ 42    However, the division in *Jones* reached this conclusion without significant discussion and without the benefit of the test announced in *Kinney*. More importantly, the analysis in *Jones* left out a critical point. The opinion turned on the division's observation that "the wife would not have been implicated in any wrongdoing that might have jeopardized her status as a

12

probationer." 971 P.2d at 244. But the Supreme Court clearly identified that probationary status may be "admissible to afford a basis for an inference of undue pressure because of [the witness's] vulnerable status as a probationer, *as well as* of [the witness's] possible concern that he might be a suspect in the investigation." *Davis*, 415 U.S. at 318 (footnote and citation omitted) (emphasis added).

¶ 43    Thus, the case law in Colorado does not sufficiently answer whether a witness's probationary status alone implicates a defendant's rights under the Confrontation Clauses.

E.    Other Jurisdictions

¶ 44    Courts in other jurisdictions have addressed this issue.

¶ 45    Some courts have held that probationary status is not automatically admissible to impeach a witness for bias or motive. This position is typified by the Texas Court of Criminal Appeals' opinion in *Irby v. State*, 327 S.W.3d 138 (Tex. Crim. App. 2010). There, the majority explained that

> a "vulnerable relationship" based on a
> witness's pending charges or probationary
> status does not hover cloud-like in the air,
> ready to rain down as impeachment evidence
> upon any and all such witnesses. There must

be some logical connection between that "vulnerable relationship" and the witness's potential motive for testifying as he does. . . . [T]his "causal connection" or logical relationship is a matter of simple relevance under Rule 401. Evidence that a witness is on probation, is facing pending charges, or has a prior juvenile record is not relevant for purposes of showing bias or a motive to testify absent some plausible connection between that fact and the witness's testimony.

*Id.* at 147-49 (footnote omitted).[1]

¶ 46     Some jurisdictions have taken the opposite position. For example, the Oregon Court of Appeals has held that

[e]vidence that a person is on probation and at risk of having that probation revoked is generally relevant to that person's credibility when he or she testifies for the prosecution in a criminal case, except, perhaps, in extraordinary circumstances . . . (for example, if the term of probation was due to expire very shortly after the trial).

---

[1] Other courts have also held that when there is a logical connection between the witness's probationary status and the factual basis for a potential bias, the defendant is entitled, under *Davis*, to impeach that witness with that status. *See, e.g., People v. Brady*, 236 P.3d 312, 325 (Cal. 2010) (The trial court did not err in limiting the defendant's cross-examination of a witness where "[d]efendant made no showing that [the witness] actually had been offered leniency or threatened with retaliation by the prosecution. In fact, the trial prosecutor was not even aware [the witness] was on probation until his criminal record was checked during the course of defendant's trial.").

*State v. Shelly*, 157 P.3d 234, 236 (Or. Ct. App. 2007). These jurisdictions conclude that the necessary "logical relationship stems from the very fact that the witness is testifying for the same entity, the State, which also supervises his probation." *Irby*, 327 S.W.3d at 161 (Holcomb, J., dissenting).[2]

¶ 47    We are persuaded by those authorities that hold that probationary status is not automatically admissible to impeach a witness for bias or motive; instead some logical connection between the probationary status and the witness's potential motive for testifying is required. While we appreciate that in many cases it may take very little to connect a witness's probationary status to a motive to testify, we are not convinced that probationary status is relevant in all cases.

¶ 48    We reach this conclusion in part because Colorado courts have weighed in on aspects of this issue. Indeed, a rule that the

---

[2] *See Scott v. State*, 730 So. 2d 732, 732-33 (Fla. Dist. Ct. App. 1999) ("Such evidence has probative value to show that the witness has motive to testify so as to please authorities who have discretion over his status."); *State v. Bowen*, 867 P.2d 1024, 1032 (Kan. 1994) (A witness's "status of being on probation created a relationship with the State," "a person on probation would be loath to do anything that could be displeasing to the authorities," and such a witness "may have been eager to please the State.").

mere fact of being on probation is always a basis for showing the potential bias or interest of a witness would contrary to the fact-specific test announced by our supreme court. *Kinney*, 187 P.3d at 561 ("[R]eviewing courts have examined whether *the particular facts of the case* show that the witness's testimony might have been influenced . . . .") (emphasis added). And it would be inconsistent with similar cases in which our supreme court has held that evidence an arrest or pending charge against a witness, without more, is not admissible. *Id.* at 559 (citing *King*, 179 Colo. at 98, 498 P.2d at 1144).

¶ 49 The contrary position is also at odds with decisions by other divisions of this court holding that trial courts did not err in limiting cross-examination regarding a witness's probationary status. *See Jones*, 971 P.2d at 244 (There was no error because there was "no evidence even to suggest that defendant's wife believed her probationary status was in jeopardy. Nor was there any basis for such a belief."); *Melanson*, 937 P.2d at 839 (concluding there was no error "because the witness was on probation in the state of Washington, [and] Colorado prosecutors had no authority or ability to affect the witness' probation status").

¶ 50    Thus, we reject defendant's position that a witness's probationary status is always admissible to show a witness's possible bias and motive to testify as inconsistent with Colorado and United States Supreme Court precedent.

## F.    Application

¶ 51    E.S. was serving a one-year probation for a forgery conviction at the time of defendant's trial. Defendant points to no other facts that otherwise logically connect E.S.'s probationary status with her testimony at defendant's trial.

¶ 52    Not only that, but the record shows that E.S. was on probation in Broomfield County, while defendant was on trial in Jefferson County. These counties are in two different judicial districts, with different district attorneys and probation offices. So there is even less of a logical connection between being on probation and a motive to testify in this case because the jurisdictions and government actors are different. *See Melanson,* 937 P.2d at 839.

¶ 53    Accordingly, we conclude the trial court did not err because the particular facts of this case do not show that the witness's testimony might have been influenced by a promise for, or simply a

hope or expectation of, leniency in exchange for favorable testimony. *See Kinney*, 187 P.3d at 561.

## III. Sufficiency of the Evidence

¶ 54 Defendant also contends that there was insufficient evidence to support his conviction for felony menacing. First, he argues the menacing statute requires that a defendant's statement or action place the victim in fear before any actual injury. Second, he argues the conduct underlying his menacing conviction cannot be the same single act as the conduct underlying his assault conviction. Again, we disagree.

## A. Standard of Review

¶ 55 We review the sufficiency of the evidence de novo. *People v. McCoy*, 2015 COA 76M, ¶ 37 (*cert. granted* Oct. 3, 2016). When reviewing the evidence, we consider the evidence as a whole and in the light most favorable to the prosecution, giving the prosecution the benefit of every reasonable inference that can be drawn from the evidence. *People v. Shawn*, 107 P.3d 1033, 1034 (Colo. App. 2004). The evidence is sufficient if it supports "a rational conclusion that the defendant is guilty of the crime charged beyond a reasonable doubt." *McCoy*, ¶ 37; *Shawn*, 107 P.3d at 1034.

18

## B.    Fear Before Any Injury

¶ 56    A defendant commits menacing if "by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury." § 18-3-206(1), C.R.S. 2017; *Shawn*, 107 P.3d at 1034.  In determining whether the defendant knowingly placed another person in fear of imminent serious bodily injury, the proper focus is on the defendant's intent, not the victim's perception or reaction.  *Shawn*, 107 P.3d at 1035. "The prosecution need only prove the defendant was aware that his or her conduct was practically certain to cause fear."  *Id.*; *People v. Manzanares*, 942 P.2d 1235, 1239 (Colo. App. 1996).  The defendant's subjective awareness may be inferred from his conduct and the surrounding circumstances; direct evidence need not be presented.  *Manzanares*, 942 P.2d at 1239.

¶ 57    Here, the prosecution argued that the jury could reasonably conclude that by strangling T.M., defendant intended to place her in fear of imminent bodily injury.  In support of this position, the prosecution presented testimony from T.M. that while defendant strangled her she had trouble breathing, her vision became blurry, and she thought she was going to die.

¶ 58    Defendant argues this was insufficient for a conviction because the menacing statute requires that "the defendant's statement or gesture communicate a threat in a way that places the victim in fear *before* she is actually injured." Thus, he argues that because the evidence showed he grabbed T.M. from behind without warning and proceeded to choke her, the evidence proved "not *imminent* serious bodily injury, but actual, present injury."

¶ 59    This argument has at least two flaws. First, it has a faulty premise. The language of the statute does not require, either explicitly or implicitly, that the victim be placed in fear before he or she is injured. It requires only that the defendant "by any threat or physical action, . . . knowingly places or attempts to place another person in fear of imminent serious bodily injury." § 18-3-206(1). It is therefore irrelevant whether the victim is injured before, during, or after he or she is placed in fear of imminent serious bodily injury, so long as the defendant's actions place or attempt to place the victim in such fear.

¶ 60    Second, it presumes that actual, present injury cannot be the basis for *fear* of imminent serious bodily injury. The facts of this case perfectly illustrate why this is wrong. When defendant began

20

strangling T.M., he caused her actual injury. But it was this injury that also reasonably caused her to fear that additional serious injury was imminent — namely, that defendant would keep choking her until she died. Thus, considered in the light most favorable to the prosecution, the evidence supports "a rational conclusion that the defendant is guilty of the crime charged beyond a reasonable doubt." *McCoy*, ¶ 37.

¶ 61  Accordingly, we reject defendant's argument that the evidence was insufficient because it did not establish that he threatened the victim before injuring her.

## C.  Violation of Multiple Statutes

¶ 62  "[A] single transaction may give rise to the violation of more than one statute." *People v. James*, 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972). "When any conduct of a defendant establishes the commission of more than one offense, the defendant may be prosecuted for each such offense." § 18-1-408(1), C.R.S. 2017. And "[i]f the same conduct is defined as criminal in different enactments or in different sections of this code, the offender may be prosecuted under any one or all of the sections or enactments," subject to certain limitations not relevant here. § 18-1-408(7). It is

up to the prosecution to determine which crimes to charge when a person's conduct arguably violates more than one statute. *James*, 178 Colo. at 404, 497 P.2d at 1258; *see also People v. Smith*, 938 P.2d 111, 115 (Colo. 1997) ("Ordinarily, a prosecutor has discretion to charge any applicable offense.").

¶ 63     Defendant argues the conduct underlying his menacing conviction cannot be the same single act as the conduct underlying his assault conviction. But he presents no basis to depart from the law establishing that a person can commit two crimes with one act. He does not argue that menacing is a lesser included offense, and our case law makes clear that it is not. *See, e.g., People v. Truesdale*, 804 P.2d 287, 289 (Colo. App. 1990) ("[F]elony menacing is not a lesser included offense of second degree assault."). Nor has defendant provided us with any case law establishing the proposition that a single act constituting assault cannot, in and of itself, also prove menacing.

¶ 64     Defendant is correct that in prior published cases in which Colorado courts have affirmed convictions for both menacing and assault convictions, the defendant committed two distinct acts: one that knowingly placed or attempted to place the victim in fear of

22

injury, and one that caused actual injury to the victim. *See People v. Williams*, 827 P.2d 612, 614-15 (Colo. App. 1992) (deciding there was sufficient evidence to sustain menacing and assault convictions where the defendant placed a knife at the throat of one victim stating, "If you move, I'll kill you," and also kicked and stabbed another victim); *Truesdale*, 804 P.2d at 288-89 (holding there was sufficient evidence to sustain menacing and assault convictions where the defendant confronted the witness with a gun, saying, "I'm gonna blow your fucking brains out," and injured the victim's hand when it was pushed against the cocked hammer of the gun).

¶ 65    But simply because these cases upheld convictions when the defendant committed two separate acts does not support the rule that defendant advocates for here. Indeed, nothing in these cases suggest such a rule. And such a rule would be contrary to the established law that the same conduct can subject a defendant to criminal liability under multiple statutes.

¶ 66    Nor are we convinced by defendant's argument that if we hold that the single act constituting the assault, with no additional physical action or verbal threat, can be sufficient to show an intent

23

to cause fear, then every instance of assault would necessarily include menacing.

¶ 67    Indeed, the cases cited by defendant support the opposite conclusion: "the fact that a defendant intentionally caused or attempted to cause bodily injury to an intended victim *does not necessarily compel the conclusion* that the defendant also knowingly placed the victim in fear of serious bodily injury." *Truesdale*, 804 P.2d at 288-89 (emphasis added).

¶ 68    Further, contrary to defendant's position, all defendants in assault cases will not necessarily face criminal liability for menacing simply because the victim is afraid during an assault, because the proper focus is on the defendant's intent, not the victim's perception or reaction. *Shawn*, 107 P.3d at 1035.

¶ 69    Accordingly, we reject defendant's contention that there was insufficient evidence to convict him of felony menacing because the same physical act underlies his assault conviction.

## IV.   Conclusion

¶ 70    The judgment is affirmed.

JUDGE DUNN and JUDGE WELLING concur.