**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVEN ROBERT VENJOHN,

    Defendant - Appellant.

No. 23-8028
(D.C. No. 1:22-CR-00131-ABJ-1)
(D. Wyo.)

_____

**ORDER**
_____

Before **PHILLIPS**, **SEYMOUR**, and **MURPHY**, Circuit Judges.
_____

This matter is before the court *sua sponte* to correct a clerical error on pages 17 and 18 of the majority opinion issued on June 10, 2024. The Clerk's Office shall replace the June 10, 2024 opinion with the attached revised opinion effective *nunc pro tunc* to the date the original opinion was filed.


Entered for the Court,


CHRISTOPHER M. WOLPERT, Clerk

FILED
United States Court of Appeals
Tenth Circuit

June 10, 2024

Christopher M. Wolpert
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

STEVEN ROBERT VENJOHN,

    Defendant - Appellant.

No. 23-8028

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 1:22-CR-00131-ABJ-1)**

_____

Grant R. Smith, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Jonathan C. Coppom, Assistant United States Attorney (Nicholas Vassallo, United States Attorney, with him on the brief), Office of the United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

_____

Before **PHILLIPS**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

_____

**SEYMOUR**, Circuit Judge.

_____

    Mr. Steven Robert Venjohn was indicted for, and pled guilty to, being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). He was sentenced to 41 months' imprisonment. When calculating his sentence, the district court held that Mr. Venjohn's

prior conviction for Colorado felony menacing categorically qualified as a "crime of violence" under § 4B1.2(a)(1) of the United States Sentencing Guidelines ("U.S.S.G"). Mr. Venjohn now appeals, arguing that the district court's ruling improperly inflated his sentencing range and asking us to determine if Colorado felony menacing qualifies as a "crime of violence" under the Sentencing Guidelines.

We hold that in light of the Supreme Court's recent decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022), Colorado felony menacing no longer categorically qualifies as a "crime of violence" under the Sentencing Guidelines. We therefore reverse and remand for resentencing.

## I.

The factual circumstances leading to Mr. Venjohn's arrest and indictment are largely irrelevant to the issues in his appeal. It is enough to say that in January 2023, Mr. Venjohn pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), (g)(3), and 924(a)(8).[1] In preparation for sentencing, the United States Probation Office prepared a presentence investigation report ("PSR"). In the PSR, the probation officer calculated Mr. Venjohn's base offense level at 20 by applying Sentencing Guideline § 2K2.1(a)(4)(A). That Guideline, which applies to defendants convicted of

---

[1] Relevant here, 18 U.S.C. §§ 922(g)(1) and (g)(3) make it illegal for anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" or "who is an unlawful user of or addicted to any controlled substance . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

unlawfully possessing a firearm, generally sets a base offense level at 12. *See* U.S.S.G. §

2K2.1(a)(7). However, that base offense level increases to 20 if "the defendant committed

any part of the instant offense subsequent to sustaining one felony conviction of [] a *crime*

*of violence*." § 2K2.1(a)(4)(A) (emphasis added). A "crime of violence" is "any offense

under federal or state law . . . that has as an element the use, attempted use, or threatened

use of physical force against the person of another." § 4B1.2(a)(1).[2]

The probation officer found that Mr. Venjohn's previous conviction for Colorado

felony menacing[3] qualified as a § 4B1.2(a) "crime of violence" and increased his base

offense level to 20 accordingly. During sentencing, the district court agreed and ultimately

sentenced Mr. Venjohn to 41 months' imprisonment. Mr. Venjohn timely appealed.

## II.

---

[2] Guideline § 2K2.1(a)(4)(A) incorporates by reference the definition of a "crime of violence" in § 4B1.2(a). Section 4B1.2(a) also defines a "crime of violence" as "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)." U.S.S.G. § 4B1.2(a)(2). Since Mr. Venjohn's prior conviction was for none of these offenses, that subsection is irrelevant.

[3] Specifically, in 2021, Mr. Venjohn pled guilty to violating Colorado Statute § 18-3-206. At the time of his conviction, menacing was a class 3 misdemeanor. It became a class 5 felony if "committed (a) [b]y the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or (b) [b]y the person representing verbally or otherwise that he or she is armed with a deadly weapon." Colo. Rev. Stat. § 18-3-206(1)(a)–(b) (2022) (current version at Colo. Rev. Stat. §18-3-206).

Mr. Venjohn contends the district court incorrectly calculated his sentencing range when it improperly determined that Colorado felony menacing categorically qualifies as a "crime of violence." Although he objected to the court's calculation of his base offense level, he did not do so on the same grounds he advances now. Thus, as he admits, our review is for plain error. "Under Federal Rule of Criminal Procedure 52(b), a plain error that affects substantial rights may be considered even though it was not brought to the court's attention." *United States v. Cantu*, 964 F.3d 924, 935 (10th Cir. 2020) (quoting *United States v. Faulkner*, 950 F.3d 670, 672 (10th Cir. 2019)). Per that standard, a defendant must show "(1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Moore*, 30 F.4th 2021, 2025 (10th Cir. 2022) (quoting *United States v. Poe*, 556 F.3d 1113, 1128 (10th Cir. 2009)).

A.

The first step in our plain error review is determining whether the district court committed reversible error. We must determine whether it was error for the court to characterize Mr. Venjohn's prior conviction for Colorado felony menacing as a § 4B1.2(a)(1) "crime of violence" and to increase his base offense level accordingly. Mr. Venjohn argues, and the government more or less concedes, that the court's application of § 4B1.2(a)(1) was error. We agree.

1.

We start by acknowledging that pre-2022, our circuit precedent would have easily disposed of Mr. Venjohn's appeal. In *United States v. Armijo*, 651 F.3d 1226 (10th Cir. 2011), we analyzed the exact Colorado statute at issue here, Colo. Rev. Stat. § 18-3-206, and held that Colorado felony menacing categorically qualified as a "crime of violence" under the Sentencing Guidelines. 651 F.3d at 1233. Because we are bound by our own precedent and that of prior panels, *United States v. Manzanares*, 956 F.3d 1220, 1225 (10th Cir. 2020), Mr. Venjohn's prior conviction would have indisputably been a "crime of violence" for sentencing purposes. In 2022, however, the Supreme Court decided *United States v. Taylor*. There the Court held that a "threatened use" of force will require *some* communication by the defendant to his victim. Specifically, it opined that:

> [I]n the criminal law the word "threat" and its cognates usually denote "a communicated intent to inflict physical or other harm on any person or on property." Of course, threats can be communicated verbally or nonverbally—pointing a gun at a cashier conveys a threat no less effectively than passing a note reading "your money or your life." But one way or another, some form of communication is usually required. Even the government concedes that the words "threatened force" in the Hobbs Act require proof that the defendant communicated a threat to a second person, whether or not that individual is the target of the threat.

*Taylor*, 142 S. Ct. 2022–23 (citations removed) (cleaned up).[4] In light of *Taylor*, we must revisit *Armijo*'s holding that Colorado felony menacing categorically qualifies as a "crime of violence" under U.S.S.G. § 4B1.2(a)(1).

---

[4] The Court in *Taylor* was analyzing the definition of a "crime of violence" in the Hobbs Act, 18 U.S.C. § 924(c)(3)(A), not the definition in U.S.S.G. § 4B1.2(a)(1) at issue here. However, the wording of the two sections is virtually identical. *Compare* 18 U.S.C. § 924(c)(3)(A), *with* U.S.S.G. § 4B1.2(a)(1). We are not persuaded that we should overlook the Court's decision because the Hobbs Act and the Colorado felony menacing statute

2.

When determining whether a defendant's prior conviction is a "crime of violence" under U.S.S.G. § 4B1.2(a), we apply what is known as the "categorical approach." *See United States v. Mendez*, 924 F.3d 1122, 1124 (10th Cir. 2019). Under this approach, we compare the elements of the state crime and the definition of a "crime of violence." *See United States v. Wilkins*, 30 F.4th 1198, 1201 (10th Cir. 2022) ("Under the categorical approach, we compare the underlying state statute to the guidelines' definition of a 'crime of violence.'"); *United States v. Titties*, 852 F.3d 1257, 1265 (10th Cir. 2017). Crucially, we do not look to the "underlying facts" of a specific defendant's conviction; we look only to the predicate crime's *elements*. *See United States v. Garcia*, 877 F.3d 944, 948 (10th Cir. 2017); *Taylor*, 142 S. Ct. at 2020 ("And answering [the question of whether a crime has as an element the use, attempted use, or threatened use of physical force] does not require—in fact precludes—an inquiry into how any particular defendant may commit the crime."); *United States v. DeGeare*, 884 F.3d 1241, 1246 (10th Cir. 2018) ("Under the [] categorical approach, we examine the statute—and only the statute—and ask whether it can be violated without the use, attempted use, or threatened use of physical force." (cleaned up)). In doing so, "we look to the *least of the acts criminalized* by the [state] statute." *United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017) (emphasis added). *See also*

---

proscribe different kinds of conduct. *See* Aple. Br. at 6. That might be true, but it is also irrelevant. The relevant comparison is between the Hobbs Act's so-called "elements clause" at § 924(c)(3)(A) and the Guidelines' own "elements clause" at § 4B1.2(a)(1). We see no material differences between the two.

*Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (explaining that we presume that a defendant's conviction "rested upon nothing more than the least of the acts" criminalized by a state offense (quoting *Johnson v. United States (Johnson I)*, 559 U.S. 133, 138 (2010))).

The categorical approach thus demands that the elements of the state crime and the definition of a "crime of violence" in § 4B1.2(a) be a so-called "categorical match" for the sentencing enhancement to apply. *See Mendez*, 924 F.3d at 1124. "If a course of conduct would be criminal under the statute but the same conduct would not satisfy [the definition of "crime of violence"] of § 4B1.2(a), then no conviction under the statute will serve as a predicate." *Id. See also Titties*, 852 F.3d at 1266 ("If the statute [at issue] sweeps more broadly than the [Guideline] definition—that is, if some conduct would garner a conviction but would not satisfy the definition—then any conviction under that law cannot count as [a "crime of violence"]." (cleaned up)). Said another way, if the state statute *always* requires the prosecution to prove "the use, attempted use, or threatened use of force," then that crime will be a § 4B1.2(a)(1) "crime of violence"; if the statute criminalizes conduct that does not require such a showing, then *no* conviction under that statute can be deemed a crime of violence. "The test is all or nothing." *Mendez*, 924 F.3d at 1124.

Here, then, we ask whether one can violate the Colorado felony menacing statute without "the use, attempted use, or threatened use of physical force against the person of another" (as that is understood under *Taylor*). If so, then the Colorado statute and Guideline definition are a categorical *mis*match, and Mr. Venjohn's Colorado conviction cannot be used to enhance his Sentencing Guideline range.

Such a categorical comparison between the Sentencing Guidelines and a state statute necessarily requires the "application of both federal law and [] state law." *United States v. Harris*, 844 F.3d 1260, 1264 (10th Cir. 2017). Federal law determines the meaning of "the use, attempted use, or threatened use of physical force" in § 4B1.2(a)(1); state law "defines the substantive elements of the crime of conviction." *Id.*

We look first at the relevant federal law. The Sentencing Guidelines define a "crime of violence" as:

> [A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that— (1) has as an element the use, attempted use, or threatened use of physical force against the person of another . . . .

U.S.S.G. § 4B1.2(a)(1). In *Taylor*, 142 S. Ct. 2022–23, the Supreme Court held that a "threatened use" of force requires *some* form of communication. The threat need not be verbal, nonverbal communication will do. Nor need the threat be communicated to the defendant's intended target so long as "the defendant communicated a threat to a second person." *Id.* Thus, some communication is required.

With respect to Colorado law, we similarly look to the Colorado statute's text and the state's judicial interpretation of it. *See, e.g.*, *Johnson I*, 559 at 138 ("We are [] bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements of [the crime of conviction]."). According to Colorado law:

> A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury.

Colo. Rev. Stat. § 18-3-206. The crime is a felony if "committed by the use of a firearm, knife, or bludgeon or a simulated firearm, knife, or bludgeon." *Id.* Importantly to Mr. Venjohn's case, Colorado courts have interpreted that statute's sweep broadly. In *People v. Saltray*, 969 P.2d 729 (Colo. App. 1998), the Colorado Court of Appeals was firm that communication of a defendant's threat to his victim was unnecessary under the statute. "[W]e conclude that it is unnecessary for the victim actually to hear or be cognizant of any threat from the defendant." *Id.* at 732. All the statute requires is "evidence . . . that defendant [*sic*] knew his actions, if discovered, would place the victim in fear of imminent serious bodily injury by use of a deadly weapon." *Id.* This is so because, as the Colorado Court of Appeals explained, the statute's "proper focus is on the intent and conduct of *the actor* and not the victim." *Id.* at 731 (emphasis added).

Comparing these two sets of law—the Sentencing Guidelines with their *Taylor* interpretation, and the Colorado felony menacing statute interpreted under *Saltray*—we conclude that Colorado felony menacing can no longer be considered categorically a § 4B1.2(a)(1) "crime of violence" post-*Taylor*. Under the categorical approach, we presume that Mr. Venjohn's conviction rested upon nothing more than the *least* of the acts criminalized under Colorado's felony menacing statute, and then we determine whether those acts are encompassed by the Guideline's "crime of violence" definition. *See Moncrieffe*, 569 U.S. at 185. *Saltray* makes clear that the least of the acts criminalized under Colorado's felony menacing statute, i.e., the minimum act the government must prove to sustain a conviction, is that the defendant's words and/or actions constituted an

9

*uncommunicated* threat. *Saltray*, 969 P.2d at 732. Actual communication to, or cognition by, the victim of the threat is not required under Colorado law. So long as the defendant's conduct, "if discovered, would place the victim in fear of imminent serious bodily injury," the crime has been committed. *Id.* This is broader than the Supreme Court's interpretation of the "threatened use" of force in *Taylor*, in which the Court held that the "threatened use" of force requires "some form of communication" by the defendant. *Taylor*, 142 S. Ct. at 2023. A defendant's uncommunicated threat would satisfy Colorado's statute under *Saltray*; it would not satisfy § 4B1.2(a)(1) after *Taylor*.

This now becomes a paradigmatic example of a categorical mismatch. Post-*Taylor*, the Colorado felony menacing statute criminalizes more conduct than that which is encompassed by the definition of a "crime of violence" in § 4B1.2(a)(1). A prosecutor need not prove in every conviction under the Colorado statute that the defendant used, attempted to use, or threatened to use physical force against the person of another, as the Supreme Court now understands it. Because the Colorado felony menacing statute criminalizes a broader swath of conduct than § 4B1.2(a)(1)—"that is, [because] some conduct would garner a conviction" under the statute, but "would not satisfy the definition" in the Guideline—no conviction under that Colorado statute can serve as a "crime of violence" for the purposes of § 4B1.2(a)(1). *Titties*, 852 F.3d at 1266.

Based on the Supreme Court's new dictate in *Taylor*, we hold that Colorado's felony menacing statute is a categorical mismatch with U.S.S.G. § 4B1.2(a)(1). It therefore was error for the district court to construe Mr. Venjohn's conviction as a "crime of

10

violence" under that Guideline and to enhance his sentence. To the extent our prior decisions are in conflict with this holding, they are necessarily overruled by *Taylor*.

B.

But is the error "plain"? Generally, an error is plain "if it is clear or obvious under current, well-settled law of this court or the Supreme Court." *Cantu*, 964 F.3d at 935 (quoting *Faulkner*, 950 F.3d at 678). We determine whether an error is obvious "at the time of the appeal." *United States v. Salas*, 889 F.3d 681, 686–87 (10th Cir. 2018); *see also Henderson v. United States*, 568 U.S. 266, 269 (2013) ("In our view, as long as the error was plain as of that later time—the time of appellate review—the error is 'plain' within the meaning of the Rule.").

1.

The Supreme Court case of *Taylor* makes plain the law that we and our district courts are bound to follow. When the Supreme Court speaks, its law becomes "well-settled" for purposes of plain error. *See, e.g.*, *United States v. Warrington*, 78 F.4th 1158, 1167 (10th Cir. 2023); *United States v. Egli*, 13 F.4th 1139, 1146 (10th Cir. 2021) ("A law is well-settled in the Tenth Circuit if there is precedent directly on point from the Supreme Court or the Tenth Circuit . . . ."); *United States v. Wolfname*, 835 F.3d 1214, 1221 (10th Cir. 2016) (same). As it relates to Mr. Venjohn specifically, the Court in *Taylor* plainly held that a "threatened use of physical force" must include *some* form of communication by the defendant to the victim. 142 S. Ct. at 2022–23. That the statutes at issue in *Taylor* and here are different, as the government argues, *see* Aple. Br. at 5, is a red herring. The

11

crux of both cases is determining what constitutes a "threat" under federal law. Because the wording of the Hobbs Act discussed in *Taylor* and that of Guideline § 4B1.2(a)(1) are essentially identical, the lessons from *Taylor* are obviously applicable to this case.

Nor do we afford much weight to the government's implication that our contrary caselaw holding that Colorado felony menacing qualified as a "crime of violence," *e.g.*, *Armijo*, makes the issue any less plain. We have never required "an intervening Supreme Court case [to be] on all fours with our precedent" when abrogating our circuit's caselaw; rather, we analyze "whether the subsequent Supreme Court decision *contradicts or invalidates* our prior analysis." *United States v. Brooks*, 751 F.3d 1204, 1209–10 (10th Cir. 2014). *See also Titties*, 852 F.3d at 1269. As we now consider *Taylor*'s impact, it is plain to us that its holding abrogates our precedents, like *Armijo*, because it fatally undermines an unchallenged foundation in those cases. *Taylor* makes clear that a "threatened use" of force requires a *communicated* threat, whereas *Armijo* and its kin rest on the presumption that an *uncommunicated* threat suffices.[5] To the extent the government suggests that to succeed on plainness a defendant must point to Supreme Court or circuit cases that *precisely* deal with the subject statute at issue, that cannot be correct. Such a holding would contravene our own precedent wherein we have held that for the purposes of plainness, "there need not be

---

[5] We know this to be true because *Armijo* wrestled with, and relied upon, a Colorado case, *People v. Shawn*, 107 P.3d 1033 (Colo. App. 2004). *See Armijo*, 651 F.3d at 1231–33. *Shawn*, in turn, relied upon and affirmed the holding in *Saltray* when it held that when prosecuting a defendant for felony menacing, "the proper focus is on the intent and conduct of the actor, not of the victim. The prosecution need only prove the defendant was aware that his or her conduct was practically certain to cause fear." *Shawn*, 107 P.3d at 1035.

an in-circuit case dealing with the precise state statute at issue if there is a case that sets forth a principle clearly generalizable to the subject statute." *Faulkner*, 950 F.3d at 680. The Supreme Court laid out such a "clearly generalizable principle" in *Taylor* when it held that a "threat" requires some communication by the defendant. That is the plain principle we must apply. *Henderson*, 568 U.S. at 274 ("[A]n appellate court must apply the law in effect at the time it renders its decision." (quoting *Thorpe v. Hous. Auth.*, 393 U.S. 268, 281 (1969)).

2.

The government, however, contends that our plainness inquiry is not finished. Because the categorical approach is an inherently comparative exercise—here, between the Sentencing Guidelines and Colorado's felony menacing statute—the government argues that Colorado law on whether felony menacing requires a communicated threat must also be "plain," that it is insufficiently so and that accordingly, Mr. Venjohn must lose. As we understand its argument, the government claims that because *Saltray* is merely a Colorado Appellate Court ruling, not a ruling from the Colorado Supreme Court, Colorado law on the issue remains insufficiently "plain." Indeed, during oral argument the government conceded that it would lose if *Saltray*'s holding—that a conviction for Colorado felony menacing does not require a communicated threat—had been issued or affirmed by the Colorado Supreme Court. In the absence of such a ruling from the state's highest court, the

13

government argues that Colorado's law remained sufficiently muddled to doom Mr. Venjohn's appeal.[6]

Several points make this position unpersuasive. We first note that the government offers us no caselaw to support such a rule. Rather, the government simply asserts that an intermediate state court's holding is not sufficiently "clear and obvious" for plain error review. We do not dispute that a ruling from a state supreme court is the plainest indicator of the meaning of state law, *see e.g.*, *Harris*, 844 F.3d at 1264, 1267, but that does not answer the question of whether a ruling from a state appellate court makes state law plain *enough*. In fairness to the government, there is no direct precedent that we can find answering the question either way. Nonetheless, the cases we have unearthed do not suggest to us that the answer is as self-evident, or as supportive of its position, as the government insists.

We begin with Supreme Court cases like *West v. American Telephone & Telegraph Co.*, 61 S. Ct. 179 (1940), which establish the basic premise that federal courts are not at liberty to simply ignore state appellate courts' holdings on state law. At bottom, *West* was about whether the Sixth Circuit was required to follow an Ohio appellate court's interpretation of an Ohio statute. The Supreme Court answered firmly 'yes.' It agreed that "the highest court of the state is the final arbiter of what is state law," but it also observed

---

[6] To support that argument, the government offered us *People v. Johnson*, 487 P.3d 1262 (Colo. App. 2020), which held that Colorado Court of Appeal divisions are not bound by decisions from other Colorado Court of Appeal divisions. We overlook the irony of the government's reliance on a Colorado Appellate Court case to undermine the clarity of a Colorado Appellate Court case.

14

that "[a] state is not without law save as its highest court has declared it." *West*, 61 S. Ct. at 236. Indeed, it held that

> There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances *a federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court* . . . . State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law is and apply it . . . .

*Id.* at 236–37 (emphasis added). And while the Court acknowledged that the Ohio Supreme Court might later modify the Court of Appeals' rule, it found such speculation to be "conjecture" and certainly no bar to applying the current law as articulated by the Ohio Court of Appeals. *Id.* at 238. Until the state supreme court takes the issue up, the Court held "the state law applicable to [the] parties . . . has been authoritatively declared by the highest state court in which a decision could be had" and, therefore, should be applied by the federal courts. *Id.*

These statements are prescient for the situation before us. Here, the Colorado Court of Appeals issued an authoritative interpretation of Colorado's felony menacing statute in *Saltray*, a decision that has been the plain law of Colorado for over twenty-five years and has never been disturbed by the Colorado Supreme Court.[7] *See Saltray*, 969 P.2d at 732.

---

[7] We note that although the Colorado Supreme Court has never squarely affirmed their holdings, it has cited *Shawn* and *Saltray* approvingly in its own decisions. *See Margerum v. People*, 454 P.3d 236, 243 (Colo. 2019). This appears to be a strong indicator that the Colorado Supreme Court looks positively on the law in both cases. While not dispositive, *Margerum* offers another clue that Colorado courts' understanding of the state's menacing law is plainer than the government would have us believe.

15

We thus have an authoritative interpretation of Colorado law from the highest court of Colorado that has passed on the issue, as was the case in *West*.

*West*'s broad holding is also supported by the specific process we have adopted in more recent and factually analogous cases. In *United States v. Wilkins*, 30 F.4th at 1203, we applied plain error to review whether Texas robbery was a "crime of violence" under the same Sentencing Guideline at issue here, § 2K2.1(a)(4)(A). To answer that, we had to determine whether it was plain error that the district court construed the components of Texas robbery as "elements," not "means," or, said otherwise, whether it was plain error that the court construed the Texas robbery statute as divisible. *Id.*[8] We held Wilkins did not meet his plain error burden and affirmed. *Id.* at 1210.

But *Wilkins*' analysis, not its outcome, is the more instructive. When analyzing the Texas statute, we looked to Texas caselaw. We began with cases from Texas's highest criminal court, but finding no definitive answer there we turned to Texas *appellate court* cases. *Id.* at 1204, 1205–06 (discussing *Burton v. State*, 510 S.W.3d 232 (Tex. Ct. App. 2017), after finding that a higher court's holding was ambiguous). If a state appellate court's ruling could never make "plain" that state's law, as the government seems to suggest, then there would have been no reason for us to consider the Texas appellate court's ruling. True, we ultimately found that *Burton*'s ruling did not resolve the divisibility question in Texas law because (1) *Burton* did not squarely address the issue at

---

[8] That inquiry, in turn, determined whether it was error for the district court to apply a modified categorical, rather than the pure categorical, approach. *Wilkins*, 30 F.4th at 1202.

bar and (2) Wilkins' alternate interpretation would have created "an internal conflict among Texas's intermediate appellate courts." *Id.* at 1206. But neither of those hurdles is present in *Saltray*. *Saltray* unequivocally addresses the issue at bar, namely that Colorado felony menacing does not require a communicated threat, and we know of no cases in which acknowledging that clear articulation of Colorado law would create "internal conflict" among Colorado's appellate courts.[9] In other words, *Wilkins* suggests that sufficiently pertinent and unchallenged state appellate court cases, like *Saltray*, *can* make that state's law "plain" for purposes of our plain error review.

In *United States v. Fagatele*, 944 F.3d 1230 (10th Cir. 2019), we also indicated a willingness to consider state intermediate courts' decisions for purposes of plain error. There, Mr. Fagatele asserted that Utah's third-degree aggravated assault was a plain categorical mismatch with U.S.S.G. § 4B1.2(a)(1) and offered as support *State v. Salt*, 347 P.3d 414 (Utah Ct. App. 2015), a Utah appellate court case. We ultimately rejected Mr. Fagatele's argument, but only after an extensive consideration of *Salt*'s holding. *See Fagatele*, 944 F.3d at 1239–40. It was only because *Salt*'s "ambiguous language," which

---

[9] Although the government does not cite it, we are aware of another Colorado Appellate Court case, *People v. Procasky*, 467 P.3d 1252 (Colo. App. 2019), which might be read to challenge *Saltray*'s holding and, by extension, undercut the plainness of Colorado law on felony menacing. We are not convinced that proposition withstands scrutiny. For one thing, *Procasky* relies on *Margerum*, the Colorado Supreme Court case that, as mentioned, itself relies on *Saltray* and *Shawn*. *Procasky*, 467 P.3d at 1261; *Margerum*, 454 P.3d at 243. Moreover, the single solitary sentence in *Procasky* that might raise concern is seemingly at flagrant odds with the holding from *Margerum* it had just cited. *Procasky*, 467 P.3d at 1261. This is insufficient to establish that Colorado law is any less plain.

did not "clearly or obviously" support his position, that we held "Mr. Fagatele [could not] satisfy our plain-error test." *Id.* at 1240. Although we did not decisively answer the question in *Fagatele*, *id.* at 1239, that case's analysis underscored our willingness to turn to, and, indeed, defer to, a state intermediate court's interpretation of its own law, provided it is sufficiently clear. Finally, although they dealt with issues on de novo review, we are further encouraged by our statements in cases like *Harris* and *Garcia*. *See Harris*, 844 F.3d at 1264 (noting that "[d]ecisions from the state supreme court . . . supplemented by decisions from the intermediate-appellate courts" best indicate state law); *Garcia*, 877 F.3d at 948 (same).

It is a foundational pillar of our federalist judicial system that we show state courts a healthy respect for their judgments on state law, and they us for judgments on federal law. This includes, we think, recognizing the legitimacy and authority of a state appellate court's unambiguous interpretation of state law.

Accordingly, we hold that the district court's determination that Colorado felony menacing was a categorical match to § 4B1.2(a)(1)'s "crime of violence" definition was not only error, but was also plain under current federal law, *see Taylor*, and Colorado law, *see Saltray*.

## C.

Because Mr. Venjohn has shown that the first two prongs of our plain error test have been met and that his base offense Guideline level was improperly inflated, he has presumptively satisfied the last two prongs of our plain error analysis. *See United States v.*

18

*Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014) ("[T]his court has recognized that an obvious misapplication of the sentencing guidelines will usually satisfy the third and fourth elements of the plain error test."); *Faulkner*, 950 F.3d at 673 n.3 (noting "the now well-established principle that a plain error leading to the adoption of an incorrect, higher Guidelines range will ordinarily satisfy plain error review's third and fourth prongs"); *United States v. Rosales-Miranda*, 755 F.3d 1253, 1260 (10th Cir. 2014). The government offers, and we independently divine, no reason to depart from our general rule.

## III.

The district court's inflation of Mr. Venjohn's base offense level by characterizing his Colorado felony menacing conviction as a qualifying "crime of violence" under the Sentencing Guidelines was plain error. Accordingly, we reverse and remand for resentencing.

19

23-8028, *United States v. Venjohn*
**PHILLIPS**, J. dissenting.

I would affirm the district court's ruling that Mr. Venjohn's Colorado conviction for felony menacing qualifies as a crime of violence under U.S.S.G. §§ 4B1.2(a)(1), 2K2.1(b)(6)(B). Under the plain-error framework, I would find no error at prong one. And even if there were prong-one error, I would not find the error "plain" at prong two. On either and both of those bases, I would affirm.

1. **Error**

As does the majority, I begin with *United States v. Taylor*, 596 U.S. 845 (2022). There, the Court faced the issue whether an attempted-robbery conviction under the Hobbs Act, 18 U.S.C. § 1951, qualifies as a "crime of violence" to support a conviction under 18 U.S.C. § 924(c)(3)(A). The decision came down to whether a defendant's "threaten[ing] physical violence to any person or property, in furtherance of a plan or purpose to do anything in violation of [§ 1951]" categorically met the condition of § 924(c)(3)(A)'s elements clause. 18 U.S.C. § 1951. And that in turn came down to whether an attempted-robbery conviction under § 1951 necessarily "has as an element" "the threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 924(c)(3)(A).

The Court held that Hobbs Act attempted robbery is not a crime of violence, because § 924(c)(3)(A)'s element of "threatened use of physical force" requires that the threat be communicated to another person and that Hobbs Act *attempted* robbery does not. *Id*. at 855, 859. This is so because attempted robbery requires proof only that the

defendant had the requisite intent and took a substantial step in commission of the crime, which might not include communicating a threat to another person. *Id*. at 851. In short, the two statutes were not a categorical match.

The majority treats *Taylor*'s holding as requiring that it exclude Colorado felony menacing as a crime of violence under the near-identical elements clause of U.S.S.G. § 4B1.2(a)(1). Though *Taylor* would do so for *attempted* Colorado felony menacing, it does not do so for *completed* felony menacing—Mr. Venjohn's conviction.

In its briefing, the government skips past the issue of error at prong one of the plain-error framework, contending that any error would not be plain under prong two. But the government did not concede error, and even if it had, we would still need to find error.

In determining whether the district court erred in treating Colorado felony menacing as a crime of violence under U.S.S.G. § 4B1.2(a)(1), I turn to the elements of Colorado felony menacing at the time of Mr. Venjohn's conviction:

> (1) A person commits the crime of menacing if, by any threat or physical action, he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, it is a class 5 felony if committed:
> (a) By the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article is a deadly weapon; or
> (b) By the person representing verbally or otherwise that he or she is armed with a deadly weapon.

2

Colo. Rev. Stat. § 18-3-206 (2021).[1]

As the majority notes, Colorado menacing is categorically a § 4B1.2(a)(1) crime of violence only if all convictions under it involve the use, attempted use, or threatened use of physical force against the person of another. And as *Taylor* tells us, any "threatened use of physical force" must be communicated to another person. 596 U.S. at 856. So we must decide whether every conviction for Colorado felony menacing requires (as an element) a communicated threat to a victim. The majority opinion says no, but I say yes.

To be guilty of Colorado felony menacing, a defendant must by threat or physical action have either knowingly (1) *placed* another person in fear of imminent serious bodily injury or (2) *tried to place* another person in fear of imminent serious bodily injury. In other words, a person who accidentally places another person in such fear has not committed Colorado menacing. So a defendant can commit the crime in two ways: (1) by knowingly placing a person in imminent fear with a threat, which fear requires that the victim have seen or heard the threat, and (2) by knowingly *trying* to place the victim in imminent fear of serious bodily injury with a threat, but failing to do so. The failure may occur for any number of reasons—perhaps the victim doubts the threatener will carry through with the threat based on past experiences, or perhaps the victim has an

---

[1] As general information, I note that effective March 1, 2022, a year after Mr. Venjohn's conviction, the Colorado Assembly amended the penalty language of § 18-3-206 as follows: "Menacing is a class 1 misdemeanor, but it is a class 5 felony if committed by the use of a firearm, knife, bludgeon or other simulated firearm, knife, or bludgeon." 2021 Colo. Sess. Laws Ch. 462 (S.B. 21-271).

3

overwhelming physical advantage, or perhaps the victim believes that the defendant is using a fake knife, gun, or bludgeon. Though the two ways of committing felony menacing differ, what matters is that they both require a communicated threat to the victim.

Mr. Venjohn tries to import a third way of committing felony menacing into the felony-menacing statute. He maintains that a defendant issuing a threat attempts to place the other person in fear of imminent serious bodily injury even when the other person does not hear or see the threat. For instance, if a defendant points a gun and screams a threat at his target just as a loud truck goes by and drowns out the scream, the defendant says that is felony menacing. Though this more-expansive reading of criminal liability for the "attempts to place" part of the statute appears conceivable at first blush, we should remember this is a criminal statute to be construed narrowly.

Further, Mr. Venjohn's reading suffers an even more serious problem that he fails even to address. His reading would impermissibly merge Colorado *attempted* felony menacing into the menacing statute. A defendant trying to threaten—but thwarted in his effort (as by the loud-truck example above)—would have tried to commit felony menacing but failed. For that unsuccessful defendant, *Taylor* would bar the attempted felony-menacing crime from qualifying as a crime of violence, because it would not have as an element a communicated threat. For attempted felony menacing, the government would need to prove only that the defendant had the requisite intent and had taken a substantial step in committing felony menacing. *See* Colo. Rev. Stat. § 18-2-101(1). Colorado law treats attempted felonies differently, not only in their elements but in their

4

punishments. Under Colorado law, completed felony menacing is a class 5 felony, and *attempted* class 5 felony is a class 6 felony. Colo. Rev. Stat. § 18-2-101. Nowhere does § 18-3-206 mention a class 6 felony, so it obviously does not include that crime. Thus, attempted felony menacing falls outside of § 18-3-206, which applies only when "[a] person commits the crime of menacing[.]" This comports with the statute's wording, which applies only when "[a] person commits the crime of menacing[.]" *Id.*

Unlike the dissent, the majority does not analyze error under prong one. That is because it feels bound by a Colorado Court of Appeals ruling that Colorado felony menacing does not require a communicated threat. That takes me to the question of "plain" error under prong two.

## 2. "Plain" Error

The majority bows to *People v. Saltray*, 969 P.2d 729 (Colo. App. 1999). There, a division of the Colorado Court of Appeals affirmed a felony-menacing conviction on the following facts: the defendant and a female neighbor were chatting outside when the victim left his adjacent house, said hello, and turned away on his way to his car; the defendant said "Oh, no" and uttered, "If he comes any closer I'm going to let him have one"; the female neighbor saw that the defendant was holding a revolver with his finger on the trigger and pointing it at the victim; the defendant walked backward into his garage and closed the door; and the victim never heard or saw a threat. *Id.* at 731. By affirming the felony-menacing conviction, *Saltray* indeed ruled that Colorado felony menacing does not require proof that the defendant communicated a threat to the victim. *Id.* at 732.

5

But the majority should not accept this ruling from *Saltray* as making Colorado law plain for our plain-error analysis. For starters, *Saltray* did not consider that its ruling would expand the felony-menacing statute to include attempted felony menacing. Further, *Saltray* affirmed because the court somehow felt that the jury could infer that the defendant knew the victim was "practically certain" to turn around after the victim said hello to the defendant and the other neighbor and kept walking with his back turned toward his car. In fact, the victim did not turn around, and the court never explains why the defendant should have been aware to a practical certainty that he would. *Id*. But earlier Colorado decisions had spoken of "practically certain" in a different sense—as bearing on the element of the defendant's knowledge by assessing the likelihood that the defendant's communicated threats would place the victim in fear of imminent serious bodily injury. *See, e.g.*, *People v. Shawn*, 107 P.3d 1033 (Colo. App. 2005) (defendant threatening victim with AIDS while scratching him); *People v. Zieg*, 841 P.2d 342 (Colo. App. 1992) (defendant threatening to kill and hitting door with ax).

Despite *Saltray*'s flaws and isolation, the majority says we are bound to follow it. For argument's sake, I will assume that a state's intermediate court of appeals can set "plain" law in Colorado for our plain-error framework. But Colorado's appellate court structure complicates that assumption. Mr. Venjohn has the burden to show that this remains so when a state court of appeals is separated into divisions, none of which owe the others' rulings allegiance. I see no cases confronting that issue. But more importantly, *Saltray* cannot fairly be said to represent the view of the Colorado Court of Appeals.

6

In *People v. Procasky*, 467 P.3d 1252 (Colo. App. 2020), a separate division of the Colorado Court of Appeals ruled directly contrary to *Saltray*, requiring communication of the threat for Colorado felony-menacing convictions. In *Procasky*, the court had to decide whether felony menacing was a lesser-included crime of second-degree assault. *Id*. at 1260–61. In considering the elements of felony menacing, the court concluded that "if a defendant attempted to assault the victim while the victim's back was turned or while he or she was asleep, the defendant *could not have placed or attempted to place the victim in fear of bodily injury or death*." *Id*. at 1261 (emphasis added). That rejects *Saltray*, a case in which the victim had indeed turned his back and not seen or heard the threat. Because *Procasky* and *Saltray* reach contrary conclusions on whether the threat must be communicated to the victim, the majority errs by deeming *Saltray* the settled law of the Colorado Court of Appeals and thus in concluding that *Saltray*'s ruling provides a legal rule sufficiently "plain" to satisfy the plain-error standard.

The majority suggests that the Colorado Supreme Court might favor the *Saltray* interpretation. For this, it cites *Margerum v. People*, 454 P.3d 236 (Colo. 2019). But *Margerum* simply cited *Saltray* for an unremarkable proposition not at issue in Mr. Venjohn's appeal: that "although subjective fear is not required for an act to constitute felony menacing, it is relevant to the analysis and [the victim] testified to that very fear." *Id.* at 243. For Mr. Venjohn's appeal, though, what matters is that *Margerum* says nothing about whether a defendant must communicate a threat to a victim to be guilty of Colorado felony menacing. Until the Colorado Supreme Court rules on the

7

communicated-threat question, especially with divisions of the court of appeals at odds, the law is not plain in Colorado.

The district court correctly applied the prior-crime-of-violence levels under §§ 2K2.1(a)(4)(B) and 4B1.2(a)(1). I would affirm.