**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 21, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RONNIE GERALD WIGGINS,

Defendant - Appellant.

No. 25-6013
(D.C. No. 5:23-CR-00388-G-1)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT*

_____

Before **HOLMES**, Chief Judge, **KELLY**, and **FEDERICO**, Circuit Judges.

_____

Around midnight in late October of 2022, the Norman, Oklahoma police dispatch received 911 calls reporting a white Mercedes driving erratically. Two officers located Ronnie Gerald Wiggins in the vehicle shortly thereafter while he was waiting in a McDonald's drive-thru line. The officers spoke to Wiggins and initiated a warrant check. They quickly determined Wiggins wasn't drunk but, prior to ending the traffic stop, the officers learned Wiggins had a warrant out for his arrest for a probation

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

violation on a prior felony conviction. The officers arrested Wiggins and searched his vehicle, wherein they found a firearm. For this, Wiggins was ultimately indicted on one count of felon in possession of a firearm and the enhanced penalty provision of the Armed Career Criminal Act (ACCA). Wiggins was tried and convicted before a jury.

On appeal, Wiggins challenges the district court's denial of his motion to suppress the search and seizure of the firearm from his vehicle and the district court's application of ACCA's enhanced penalty provision. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the denial of the motion to suppress but vacate Wiggins' sentence and remand for resentencing.

## I

Shortly after midnight on October 30, 2022, the Norman Police Department received two 911 calls about a Mercedes SUV driving erratically and changing speeds randomly. Officers Robertson and Walker were dispatched and located the Mercedes in a McDonald's drive-thru line. Officer Robertson approached the vehicle's passenger window and spoke to Wiggins, who was alone in the Mercedes and sitting in the driver's seat. The officer asked for Wiggins' identification, then relayed Wiggins' information to dispatch to initiate a warrant check. Officer Robertson stepped away from the vehicle and told Officer Walker that Wiggins "probably just sucks at

driving" and that Wiggins didn't exhibit physical signs of being inebriated. R. I at 56.

Officer Robertson then performed a modified horizontal gaze nystagmus (HGN) test on Wiggins to look for signs of intoxication. After Wiggins passed the test, Officer Robertson told him that he could leave once the warrant check came back. About a minute later, dispatch reported a possible outstanding arrest warrant for Wiggins. Officer Robertson then directed Wiggins to move his vehicle out of the drive-thru line. Wiggins complied, parking the SUV in front of a nearby dumpster in the parking lot. Both officers followed his vehicle across the property on foot. About four minutes later, dispatch confirmed that Wiggins had a "full extradition warrant out of Texas for a probation violation on a murder conviction." *Id.* at 57. Officer Robertson requested that dispatch send a third officer, then ordered Wiggins out of the vehicle and attempted to cuff him. Wiggins physically resisted but was ultimately subdued and arrested. The officers then found a Sig Sauer pistol, ammunition, and magazines in the Mercedes during an impound search.

Wiggins was indicted with one count of felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and the ACCA enhanced penalty provision, 18 U.S.C. § 924(e). The indictment listed four of Wiggins' prior convictions to support the ACCA enhanced penalty provision: (1) Texas first degree

murder, (2) New Mexico armed robbery, (3) federal bank robbery, and (4) Oklahoma robbery with a firearm. While the crime with which Wiggins was indicted comes with a statutory *maximum* sentence of 15 years imprisonment, 18 U.S.C. § 924(a)(8), the ACCA enhanced penalty provision, when applicable, provides for a statutory *minimum* sentence of 15 years imprisonment. 18 U.S.C. § 924(e)(1). Thus, the applicability of the ACCA enhanced penalty provision had significant sentencing implications for Wiggins.

Before the district court, Wiggins moved to suppress the firearm found in his vehicle. Wiggins did not challenge the initial traffic stop but asserted that the officers unlawfully prolonged the detention when they kept him at the scene while they waited for the warrant check to come back from dispatch. The district court denied Wiggins' motion after holding a suppression hearing, finding that the officers did not exceed the scope of the detention authority and, alternatively, that the inevitable discovery doctrine applied.

Wiggins proceeded to a two-part trial. The jury found him guilty of violating § 922(g)(1) at the first stage. At the second stage, the jury found that Wiggins had been previously convicted on all four prior crimes listed in the indictment, thus triggering the application of the ACCA enhancement.

At sentencing, Wiggins objected to consideration of his New Mexico armed robbery conviction as a predicate offense for the ACCA enhancement. The district court overruled the objection. The district court then sentenced Wiggins to 240 months' imprisonment and three years of supervised release. Wiggins timely appealed.

## II

On appeal, Wiggins challenges (1) the district court's denial of his motion to suppress, and (2) the imposition of the ACCA enhanced penalty provision at sentencing. We will address each challenge in turn.

## A

We begin with Wiggins' challenge to the district court's denial of his motion to suppress. He does not challenge the validity of the initial traffic stop at the McDonald's drive-thru and does not challenge any of the district court's factual findings. Rather, he argues that the officers exceeded the constitutionally permissible scope of the initial detention by continuing to detain Wiggins after the HGN test while they waited for the warrant check to come back from dispatch. He also argues that the district court legally erred in finding that the inevitable discovery doctrine applied because the prosecution presented no evidence at the suppression hearing concerning what the officers would have done if they had not continued to detain Wiggins.

In reviewing a denial of a motion to suppress "we consider the evidence in the light most favorable to the [government], assess factual findings for clear error, and analyze legal conclusions de novo." *United States v. Campbell*, 156 F.4th 1019, 1023–24 (2025). An officer may "initiate an investigatory detention" when he "has a particularized and objective basis for suspecting an individual may be involved in criminal activity." *Id.* at 1024 (quotation omitted). "[I]nvestigatory detentions 'must be "reasonably related in scope to the circumstances prompting the stop."'" *Id.* (quoting *United States v. Young*, 99 F.4th 1136, 1143 (10th Cir. 2023)). "There is no bright-line rule to determine whether the scope of police conduct was reasonably related to the goals of the stop; rather our evaluation is guided by common sense and ordinary human experience." *Young*, 99 F.4th at 1148 (quoting *United States v. Albert*, 579 F.3d 1188, 1193 (10th Cir. 2009)). When determining whether officers impermissibly exceeded the scope of an investigatory stop, courts consider the "underlying justification," whether "additional reasonable suspicion of criminal activity came to light during the detention," and whether the officers "diligently pursued the mission of the stop." *Id.* at 1148–49 (quotation omitted).

"Authority for the [traffic stop] ends when the tasks tied to the traffic infraction are – or reasonably should have been – completed." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). These tasks may appropriately

6

involve "certain unrelated checks" including "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355. Such "'ordinary inquiries incident to [the traffic] stop' do not violate the Fourth Amendment even in the absence of reasonable suspicion" or officer safety concerns. *United States v. Ramdial*, No. 24-6213, 2025 WL 2682624, at *3 (10th Cir. Sept. 19, 2025) (alteration in original) (quoting *Rodriguez*, 575 U.S. at 355);[1] *accord Young*, 99 F.4th at 1149 ("[P]olice officers may check to see whether a detainee is a wanted person, irrespective of the circumstances of that detention . . . even in the absence of objective safety concerns because [officers are] entitled to determine whether [the detainee was] evading justice." (citations and quotation marks omitted)). A "lawfully initiated traffic stop," therefore, "becomes unreasonable 'when an officer (1) diverts from the traffic-based mission of the stop to investigate ordinary criminal conduct, (2) in a way that 'prolongs' (i.e., adds time to) the stop, and (3) the investigative detour is unsupported by any independent reasonable suspicion.'" *United States v. Dawson*, 90

---

[1] We cite unpublished decisions for their persuasive value only and do not treat them as binding precedent. 10th Cir. R. 32.1(A).

F.4th 1286, 1291 (10th Cir. 2024) (quoting *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022)).

Wiggins asserts that, because officers stopped him to investigate if "he was driving under the influence," the stop became unreasonable once the officers realized that Wiggins was not intoxicated. Op. Br. at 29. We are not persuaded for two reasons.

First, as the district court noted, Wiggins was stopped because of 911 calls that reported Wiggins' vehicle "being driven erratically" and "increasing and decreasing speeds randomly." R. I at 55. Given these facts, we see no reason to artificially narrow the purpose of the stop to an investigation into only drunk driving, as Wiggins would like us to do. After all, erratic driving could imply more than one type of criminal offense.[2]

Second, even if reasonable suspicion for the stop had been dispelled once Wiggins passed the HGN test, the "officer's mission" for the stop "include[d] *both* deciding whether to issue a ticket *and* the ordinary tasks incident to the stop – in this case, determining whether," *Dawson*, 90 F.4th

---

[2] In reply and at oral argument, Wiggins disputed whether the 911 callers' complaints described reckless driving under Oklahoma law. *See* Okla. Stat. tit. 47, § 11-901(A). We need not decide this question because an officer is permitted to begin an investigatory detention upon reasonable suspicion that "an individual is involved in criminal activity," but is not required to have conclusive evidence satisfying the elements of a specific offense. *Campbell*, 156 F.4th at 1024.

at 1292 (emphasis in original), Wiggins had any "outstanding warrants" for his arrest, *Rodriguez*, 575 U.S. at 355.

Here, Officer Robertson initiated the warrant check through dispatch about a minute after he first made contact with Wiggins and prior to conducting the HGN test. The warrant check came back less than five minutes into the encounter. At no point did Officer Robertson "divert[] from [his] traffic-based mission . . . to investigate ordinary criminal conduct"; rather, he merely conducted "'ordinary inquiries incident to the traffic stop'" that Wiggins concedes was lawfully initiated. *Dawson*, 90 F.4th at 1291 (quoting *Rodriguez*, 575 U.S. at 355). For these reasons, we find that no Fourth Amendment violation occurred and affirm the district court's denial of Wiggins' motion to suppress.[3]

**B**

Wiggins' second challenge on appeal is to the district court's application of the ACCA enhanced penalty provision at sentencing. Wiggins initially presented two arguments in support of this challenge. First, he argued that his Texas armed robbery conviction should not be considered an ACCA predicate. Second, he argued that the district court plainly erred

---

[3] Wiggins also challenges the district court's alternative grounds for denying his motion to suppress: inevitable discovery. Because we find no Fourth Amendment violation, we need not decide this question or opine on its propriety.

by allowing a probation officer to testify during trial about the nature and circumstances of the New Mexico and federal robbery offenses based on his knowledge of the contents of the presentence investigation report. Then, after this court issued its opinion in *Campbell*, Wiggins additionally argued that his prior conviction for Oklahoma robbery with a firearm should also not be considered an ACCA predicate.

None of Wiggins' challenges on appeal were made before the district court at sentencing, so we review for plain error. *See United States v. Venjohn*, 104 F.4th 179, 183 (10th Cir. 2024). To succeed on plain error, "a defendant must show '(1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Moore*, 30 F.4th 1021, 1025 (10th Cir. 2022)).

Application of the ACCA enhanced penalty provision requires prior convictions on three "violent felon[ies]," also referred to as predicate offenses. 18 U.S.C. § 924(e)(1). ACCA defines a "violent felony" in several ways including, as relevant here, via the "so-called elements clause." *Borden v. United States*, 593 U.S. 420, 424 (2021) (plurality opinion). Under the elements clause, an offense qualifies as a predicate violent felony "if it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" *Id.* (quoting 18 U.S.C.

10

§ 924(e)(2)(B)(i)). Courts use the categorical approach to "decide whether an offense satisfies the elements clause." *Id.* The categorical approach is applied by ignoring the facts underlying the offense and instead "focusing on the elements of the crime of conviction." *Campbell*, 156 F.4th at 1028 (quoting *United States v. Deiter*, 890 F.3d 1203, 1211 (10th Cir. 2018)). "If any . . . of the acts criminalized" by the relevant statute "do not entail [the] kind of force" specified by the elements clause, it does not "categorically match the federal standard, and so cannot serve as an ACCA predicate." *Borden*, 593 U.S. at 424.

The district court considered four of Wiggins' prior convictions to be qualifying predicates: (1) Oklahoma robbery with a firearm, (2) New Mexico armed robbery, (3) federal bank robbery, and (4) Texas first degree murder. We focus on Wiggins' challenges to his prior convictions for Oklahoma robbery with a firearm and Texas first degree murder.[4]

First, Wiggins argues that the district court plainly erred by counting his prior conviction for Oklahoma robbery with a firearm as a predicate offense under ACCA. In *Campbell*, this court held that Oklahoma robbery with a firearm was not categorically a violent felony on a plain error

---

[4] Because we find these challenges meritorious, we will not reach Wiggins' arguments regarding his New Mexico robbery and federal bank robbery prior convictions.

analysis. 156 F.4th at 1032–33. The Government concedes plain error regarding this prior conviction. We rightfully accept this concession and, applying *Campbell*, agree that Wiggins prevails on this predicate challenge.

Second, Wiggins argues that the district court plainly erred by counting his prior conviction for Texas first degree murder as a predicate offense under ACCA. Neither this circuit nor the Fifth Circuit has announced in a binding opinion whether this offense is categorically a violent felony and thus an ACCA predicate. However, following a remand by the Fifth Circuit "for further consideration in light of" the Supreme Court's decision in *Borden*, the Northern District of Texas in *Vickers v. United States* held that Texas first degree murder is not categorically a violent felony. No. 3:15-cv-3912, 2024 WL 1863114, at *3 (N.D. Tex. Apr. 29, 2024); *see also United States v. Vickers*, No. 18-10940, 2022 WL 780421 (5th Cir. 2022). The Government did not appeal the Northern District of Texas's opinion on remand in *Vickers*. Here, the Government again concedes plain error regarding Wiggins' prior conviction for Texas first degree murder.

In light of the Government's concessions that both of these offenses are not categorically violent felonies and that the district court plainly erred by counting them toward Wiggins' three ACCA predicates, only two qualifying predicates remain and thus the district court's application of

12

ACCA's enhanced penalty provision was erroneous. *See* 18 U.S.C. § 924(e)(1). Furthermore, an "illegal sentence . . . 'trigger[s] per se, reversible, plain error." *United States v. Titties*, 852 F.3d 1257, 1264 (10th Cir. 2017) (second alteration in original). Wiggins' sentence of 240 months' imprisonment is unlawful absent the application of the ACCA enhancement because the maximum sentence for Wiggins' underlying conviction, felon in possession of a firearm, is 15 years or 180 months. 18 U.S.C. § 924(a)(8); *see also Titties*, 852 F.3d at 1275 (noting illegal sentences are those that exceed the relevant statutory maximum). We therefore vacate Wiggins' sentence and remand for resentencing without application of the ACCA enhanced penalty provision.

## III

For the reasons above, we AFFIRM the district court's denial of Wiggins' motion to suppress, VACATE the district court's sentence as to Count I, and REMAND for resentencing consistent with this opinion.

Entered for the Court

Richard E.N. Federico
Circuit Judge